UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| KAYSIE FUGATE, | ) |
| | ) |
|     *Petitioner*, | ) |
| | ) |
|     v. | )  1:23-cv-02066-JMS-CSW |
| | ) |
| | ) |
| JAN DAVIS, | ) |
| | ) |
|     *Respondent*. | ) |

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS
AND DIRECTING ENTRY OF FINAL JUDGMENT**

Kaysie Fugate has filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254. She challenges a prison disciplinary proceeding in which she was found guilty of mailing, delivering, or otherwise sending unauthorized correspondence and sanctioned with a 45-day loss of good-time credit. [Filing No. 9-7.] For the reasons explained below, the disciplinary proceeding did not violate Ms. Fugate's due process rights and her habeas petition is **DENIED**.

**I.
LEGAL BACKGROUND**

Prisoners in Indiana custody may not be deprived of good-time credits or of credit-earning class without due process. *Ellison v. Zatecky,* 820 F.3d 271, 274 (7th Cir. 2016); *Scruggs v. Jordan,* 485 F.3d 934, 939 (7th Cir. 2007); *see also Rhoiney v. Neal,* 723 F. App'x 347, 348 (7th Cir. 2018). The due process requirement is satisfied with: 1) the issuance of at least 24 hours advance written notice of the charge; 2) a limited opportunity to call witnesses and present evidence to an impartial decision-maker; 3) a written statement articulating the reasons for the

disciplinary action and the evidence justifying it; and 4) "some evidence in the record" to support the finding of guilt.  *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *see also Wolff v. McDonnell,* 418 U.S. 539, 563-67 (1974).

## II.
### FACTUAL BACKGROUND

Televerde provides jobs to incarcerated women at some Indiana Department of Corrections ("IDOC") facilities.  [Filing No. 9 at 3.]  "The women employed as part of Televerde's prison workforce development program are compensated fairly and receive on-the-job training in the art of sales and marketing, business acumen, in-demand marketing technologies (Salesforce, Eloqua, Marketo, et al.), IT, and all other areas in business."  *Televerde Announces Expansion in Indiana with New Call Center at Indiana Women's Prison*, PR Newswire, July 26, 2023 (last visited October 10, 2024).  Ms. Fugate worked for Televerde while incarcerated at Madison Correctional Facility and signed an ICI/Televerde Inmate Social Selling Agreement (the "Televerde Agreement") which provided, in relevant part:

> 3.  Inmate workers shall not accept connection requests from friends or family members who attempt to engage via Televerde provided social media accounts.  It is the inmate's responsibility to immediately report the receipt of such requests to their supervisor.

[Filing No. 9-3 at 1.]

On August 19, 2022, ICI Foreman Supervisor Brandi Scholl wrote a Conduct Report charging Ms. Fugate with Offense 253, mailing, delivering, or otherwise sending unauthorized correspondence.  [Filing No. 9-1 at 1.]  Offense 253 states:

> An offender who receives a direct written order from an IDOC staff person, volunteer, or contractor to cease mailing, delivering, or otherwise sending correspondence to a specific other person, must comply with the direct written

2

order. Any act or attempt to act contrary to the direct written order, violates this provision.

[Filing No. 9-12 at 10.]

The Conduct Report states:

On 8/19/2-22 I ICI Plant Foreman Supervisor Brandi Scholl received a call from Deputy Warden Phelps about some communication between Incarcerated Individual Kaysie Fugate DOC # 237240 and a customer through Televerde. They had multiple inappropriate conversations, multiple messages between the two and money transactions between the two. The correspondence is unauthorized since she is classed to Televerde which has high standards of professionalism and strict policies around utilizing customer information for personal gain.

[Filing No. 9-1 at 1.]

A Report of Investigation states:

The Office of Investigations and Intelligence at the Madison Correctional Facility completed a full investigation into Kaysie Fugate 237240 for Unauthorized Correspondence. After the full investigation of retrieved evidence of messages and phone calls the preponderance of evidence shows that Kaysie Fugate has violated the Indiana Department of Correction Adult Disciplinary Code 253 Unauthorized Correspondence.

[Filing No. 9-2 at 1.] The Report of Investigation attaches the transcript of a July 4, 2022 call between Ms. Fugate and an individual named Trip Adams in which Mr. Adams asks to add two inmates to his JPay[1] account and Ms. Fugate (working for Televerde) helps him do so. [Filing No. 9-2 at 2.] They then discuss the fact that he is corresponding with some inmates, that Ms. Fugate

---

[1] JPay "is committed to helping friends and family stay connected to their incarcerated loved ones through a variety of corrections-related services, as well as providing quick and reliable payment options for individuals in community corrections. [It] offer[s] a fast and secure method of sending money, convenient and function-rich communications services, innovative technologies, and affordable entertainment options." https://www.jpay.com/AboutUs.aspx (last visited October 10, 2024).

3

is located in Madison County, Indiana, her first name, and the messaging system that she uses. [Filing No. 9-2 at 2.]

The Report of Investigation also attaches a July 6, 2022 email from a Televerde representative to the Warden at Madison County Correctional Facility stating:

> We have had a very persistent inbound caller making attempts to make contact with our agents. Is there a way to identify if any outbound postal mail has been sent to the below address? He is calling on the JPAY inbound line and transacting business but also very curious about Indiana's vendor and asking agents to reach out. Sarah Kernen and I have reviewed all calls and we have no evidence that anyone has acted on his encouragements. Any assistance you can provide is appreciated.

[Filing No. 9-2 at 3.] The email then lists Mr. Adams' name and address. [Filing No. 9-2 at 3.]

Thirty-three pages of GTL messages[2] reflect inappropriate, sexually explicit correspondence between Ms. Fugate and Mr. Adams from July 13, 2022 to July 29, 2022 in which the two discuss their plans to meet and have a relationship after Ms. Fugate's release. [Filing No. 9-4.] Trust Fund statements show that Mr. Adams deposited amounts into Ms. Fugate's Trust Fund Account on July 25, 2022 and August 6, 2022. [Filing No. 9-3 at 2-3.]

Ms. Fugate was notified of the charge on August 20, 2022 when she received a copy of the Conduct Report and the Screening Report. [Filing No. 9-1; Filing No. 9-5.] Ms. Fugate pled not guilty to the offense, requested a lay advocate, and did not waive 24-hours' notice of the hearing. [Filing No. 9-5.] She indicated that she did not want to call any witnesses at the disciplinary hearing, but submitted a supplemental list the day after receiving the Screening Report in which

---

[2] GTL is an inmate messaging service where users can create an account to message with inmates. *See Inmate Messaging*, GTL https://www.gtl.net/correctional-facility-services/communication-solutions/inmate-messaging/ (last visited October 10, 2024).

she requested the following evidence: "[e]videnciary (sic) of messages Brandi Scholl and Sarah Kern[3] have access to"; and "[a]udio of the 'inappropriate' phone call." [Filing No. 9-6.]

A hearing was scheduled for November 27, 2022, [Filing No. 9-8], but Ms. Fugate "request[ed] a continuance at hearing needing report of investigation. DW Phelps in incident report states an investigation was made." [Filing No. 9-8.] The hearing was ultimately held on November 30, 2022. [Filing No. 9-7.] Ms. Fugate appeared at the hearing, pled not guilty, and provided the following statement:

> 02-04-101 – no who, no when, no how in the report of conduct violates due process. [N]o witnesses listed on report of conduct. The call isn't listed as evidence. Policy 02-01-103 – must [receive] approval to correspond with him. If I am not allowed to talk to him then why haven't I [received] the report of action taken on correspondence, and they never restricted vs talking, I restricted him. This report was through I/A and how did they write me up (Brandi Scholl & Sarah Kern[e]n). The report is incorrect.

[Filing No. 9-7.]

The hearing officer considered staff reports, Ms. Fugate's statement, evidence from witnesses, an email from Lori Furniss, the Report of Investigation, GTL messages, the Televerde phone call transcript, and the Televerde Agreement and found that Ms. Fugate was guilty of Offense 253, "Mailing, Delivering, or Otherwise Sending Unauthorized Correspondence." [Filing No. 9-7.] The hearing officer wrote:

> Audio record of the phone call was not available, the transcribed version was issued. OII report and email was given at hearing. Brandi Scholl's statement in Report of Conduct states that offender had contact with this customer while at work at Televerde and that the type of contact involved inappropriate conversation which violates Televerde's standards on professionalism. Evidence shows from the phone

---

[3] This individual is referred to as "Sarah Kern," "Sarah Kernan," and "Sarah Kernen" in the parties' filings. The Court uses the spelling "Sarah Kernen," as this spelling appears to be used most frequently.

conversation (transcribed) that he obtained her information – then on GTL later shows money transactions were made.

[Filing No. 9-7.]

Ms. Fugate appealed to the Facility Head and the IDOC Final Reviewing Authority, and both appeals were denied. [Filing No. 9-9; Filing No. 9-10.] She then brought this Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. [Filing No. 1.]

## III.
### ANALYSIS

Ms. Fugate raises nine arguments in her Petition: (1) that the "proper chain of command" was not followed related to who signed the Conduct Report; (2) that it was inappropriate for Ms. Scholl to write the Conduct Report; and (3) that Ms. Fugate did not receive the evidence that she requested 24 hours before the hearing; (4) that the Conduct Report does not identify the individual Ms. Fugate was allegedly communicating with or "any clear description of the factual event"; (5) that Ms. Scholl and Ms. Kernen "wrote [the Conduct Report] based on events, messages, and transactions they do not even have the authority to access"; (6) that the person Ms. Fugate allegedly communicated with "does not categorize under any of the sections listed in 02-01-103 Restricted Correspondence"; (7) that Ms. Fugate "never [received] any forms or copies of confiscation of correspond[e]nce telling [her] that [she was] restricted or not allowed to correspond with this person"; (8) that the evidence the hearing officer relied on is not listed as evidence in the Conduct Report; and (9) that there are no witnesses listed in the Conduct Report. [Filing No. 1 at 4-10.] The Court addresses each argument in turn.

### A. "Chain of Command" for Signature on Conduct Report

Ms. Fugate argues:

(Policy 02-04-101 page 15, 8(b))  Brandi Scholl signed report of conduct.  Sarah Kernen signed report of conduct as Scholl's "immediate supervisor." Sarah Kernen is not her immediate supervisor.  Brandi Scholl is ICI/DOC staff.  Sarah Kernen is a Televerde CSR Supervisor, which is a company joint ventured with ICI and is absolutely not IDOC staff.  Two different entities.  Two different companies.  Violation of due process.

[Filing No. 1 at 5.]

The Respondent argues that "[t]here is no rule about who signs or approves the notice of the charge," "[t]here is no rule that it be signed at all," and "there is not even a rule that the person charging the violation have personal knowledge of it, as hearsay is sufficient." [Filing No. 9 at 9.] The Respondent notes that Ms. Fugate relies on a policy for her argument, but "[c]laims based on prison policy are not cognizable and do not form a basis for federal habeas relief." [Filing No. 9 at 9.]

Ms. Fugate did not file a reply.

There is no due process right to have a certain individual with a certain, specific authority sign a Conduct Report.  Ms. Fugate relies primarily on a prison policy for her argument, but prison policies are "primarily designed to guide correctional officials in the administration of a prison" and not "to confer rights on inmates." *Sandin v. Conner*, 515 U.S. 472, 481-82 (1995).  Therefore, claims based on prison policy are not cognizable and do not form a basis for habeas relief. *See Keller v. Donahue*, 271 F. App'x 531, 532 (7th Cir. 2008) (rejecting challenges to a prison disciplinary proceeding because, "[i]nstead of addressing any potential constitutional defect, all of [the petitioner's] arguments relate to alleged departures from procedures outlined in the prison handbook that have no bearing on his right to due process"); *Rivera v. Davis*, 50 F. App'x 779, 780

7

(7th Cir. 2002) ("A prison's noncompliance with its internal regulations has no constitutional import—and nothing less warrants habeas corpus review.").

The fact that Ms. Scholl and Ms. Kernen signed the Conduct Report does not provide a basis for habeas relief.

### B. Ms. Scholl Authoring the Conduct Report

Ms. Fugate argues:

> This CAB was based on an [Investigations and Intelligence] investigation. Deputy Warden Phelps notified Brandi Scholl, who then wrote the conduct report. Brandi Scholl is ICI, not internal investigations. Report of conduct should have been written by [Investigations and Intelligence] or Deputy Warden Phelps.

[Filing No. 1 at 5.]

The Respondent argues that Ms. Fugate "does not cite the rule or even a vague concept of a rule that she alleges is violated" by the fact that Ms. Scholl wrote the Conduct Report and that "[t]he only conceivable ground is a claim that the charge is based on hearsay," but "hearsay is permitted." [Filing No. 9 at 10.] The Respondent notes that Ms. Scholl is in a better position to know whether Ms. Fugate's conduct violated Televerde's written rules than Investigations and Intelligence or Deputy Warden Phelps. [Filing No. 9 at 10.]

There is no due process right to have a certain individual complete a Conduct Report and Ms. Fugate does not provide any authority for her argument. To the extent she is arguing that the charge is based on hearsay because the Conduct Report was not authored by Investigations and Intelligence or Deputy Warden Phelps, Ms. Fugate's argument is unavailing because it is permissible for a Conduct Report to be based on hearsay. *See Crawford v. Littlejohn*, 963 F.3d 681, 683 (7th Cir. 2020) (findings of prison disciplinary board can be based on hearsay).

This ground is not a basis for habeas relief.

### C. Failure to Provide Evidence 24 Hours Before Hearing

In support of her Petition, Ms. Fugate argues:

> I was never given or shown any type of evidence requested until the time of my hearing. I am supposed to be given evidence 24 hours prior to my hearing, per policy. An investigation was made through I/I, however the Report of Investigation was never made available as evidence for my review, as required per policy, 24 hours prior to hearing.

[Filing No. 1 at 6.]

The Respondent argues that there is no rule that entitled Ms. Fugate to receive evidence 24 hours before the hearing. [Filing No. 9 at 10.] She argues that the closest rule is that an incarcerated individual is entitled to 24 hours' notice of the charge before the hearing, and that Ms. Fugate received that notice. [Filing No. 9 at 10-11.] The Respondent also argues that to the extent Ms. Fugate is arguing that she was precluded from presenting the call log as evidence, that argument is meritless because the call log was relied upon by the hearing officer and it was not exculpatory. [Filing No. 9 at 13-14.]

Ms. Fugate was only entitled to 24 hours' notice of the charges against her and a summary of the facts supporting those charges, *Northern v. Hanks*, 326 F.3d 909, 910 (7th Cir. 2003), which she received. She acknowledged receipt of the Conduct Report on August 20, 2022, [Filing No. 9-1], and the hearing did not take place until November 30, 2022, [Filing No. 9-7] – well after the 24 hour notice period had passed. Ms. Fugate did not have a due process right to learn the identity of the witnesses who would testify at the hearing or the evidence that would be presented in advance of the hearing. *See Wolff*, 418 U.S. at 556 ("Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply."); *Boyd v. Warden*, 2022 WL 17404192, at *4 (S.D. Ind. Dec. 2, 2022) ("Due process

9

does not require that [the petitioner] receive advanced notice of all witnesses or the evidence against him in a disciplinary case.").

Further, to the extent that Ms. Fugate is arguing that she was not provided with the evidence that she requested, the Court notes that she only requested the messages that "Brandi Scholl and Sarah Kern[en] have access to" and "[a]udio of the 'inappropriate' phone call." [Filing No. 9-6.] The hearing officer considered the GTL messages and the transcript of the phone call, noting that the audio of the call was unavailable. [Filing No. 9-7.] *See Manley v. Butts,* 699 F. App'x 574, 576 (7th Cir. 2017) ("Prison administrators are not obligated to create favorable evidence or produce evidence they do not have.") Any argument that the evidence Ms. Fugate requested was not considered is without merit.

Ms. Fugate's argument regarding not receiving the evidence more than 24 hours before the hearing is not a ground for relief.

### D. Lack of Specificity in Conduct Report

Ms. Fugate argues in support of her Petition:

> The [Conduct Report] does not identify a name in whom I was communicating with and does not state any clear description of the factual event, besides exchanging messages with another person. No who, no when, no where, and no how was stated. This report is not legible and does not support the charged offense.

[Filing No. 1 at 6-7 (emphasis omitted).]

The Respondent argues that there is no confusion regarding the charge against Ms. Fugate "in that she and a customer through Televerde had multiple inappropriate conversations, multiple messages between the two, and money transactions between the two, and that the correspondence is unauthorized since she is classed to Televerde, which has high standards of professionalism and strict written policies around utilizing customer information for personal gain." [Filing No. 9 at

10

11.] She argues that the Report of Investigation advised Ms. Fugate that she signed the Televerde Agreement and that she received money in her Trust Fund Account twice from Mr. Adams shortly after they started communicating. [Filing No. 9 at 11.] The Respondent argues that Ms. Fugate did not ask for a continuance of the hearing after the initial continuance; that she acknowledged that she was communicating with Mr. Adams but argued that nothing in the correspondence policy required her to get permission to communicate with him, asked why she had not received "the report of action taken on correspondence," and claimed that she had "restricted him"; that she did not ask for clarification of the charges during screening, in a supplemental note she submitted after the screening session, or at the hearing; and that "she has shown by her statements at the hearing that she knew exactly what was charged." [Filing No. 9 at 11-12; Filing No. 9 at 14.] The Respondent contends that to the extent Ms. Fugate is arguing that the evidence was insufficient to support the charge, the Conduct Report alone was sufficient to establish a violation of the offense. [Filing No. 9 at 14-15.]

Due process requires that an inmate be given advanced "written notice of the charges ... in order to inform [her] of the charges and to enable [her] to marshal the facts and prepare a defense." *Wolff*, 418 U.S. at 564. "The notice should inform the inmate of the rule allegedly violated and summarize the facts underlying the charge." *Northern v. Hanks*, 326 F.3d 909, 910 (7th Cir. 2003); *see Whitford v. Boglino*, 63 F.3d 527, 534 (7th Cir. 1995).

To the extent Ms. Fugate challenges the adequacy of her advance written notice, the Court observes that she received the Report of Conduct more than 3 months before her disciplinary hearing and that she has not explained what she would have done differently if she had received additional time to prepare a defense. *See Wolff*, 418 U.S. at 564 (due process requires a minimum

of 24 hours advance written notice of the charge); *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003) (harmless error doctrine applies to prison disciplinary cases). Further, the Conduct Report states that Ms. Fugate had "multiple inappropriate conversations, multiple messages between [a Televerde customer] and money transactions between the two." [Filing No. 9-1.] Ms. Fugate stated at the hearing that she "restricted him," which shows that she knew which individual she was accused of corresponding with in an unauthorized manner. [Filing No. 9-7.] The Conduct Report provided Ms. Fugate with sufficient written notice of charges so that she could prepare a defense. The Conduct Report also met the "some evidence" standard that due process requires. *Hill*, 472 U.S. at 454 (due process requires "some evidence in the record" to support the finding of guilt); *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999) (A Conduct Report "alone" can "provide[] 'some evidence' for the…decision.").

Ms. Fugate's argument that the Conduct Report was not sufficiently specific so as to provide her of notice of the charge she faced is not a ground for relief.

### E. Conduct Report Based on Unauthorized Information

Ms. Fugate argues in support of her Petition:

> When requested evidence from Brandi Scholl and Sarah Kernen, Disciplinary Officer Cosby stated they did not have evidence of GTL messages they stated in conduct report due to not having access to my personal information such as GTL messages, money transactions – which they do not and is why I/I was involved.

> Brandi Scholl and Sarah Kernen wrote a conduct report based on events, messages, and transactions they do not even have the authority to access.

[Filing No. 1 at 9.][4]

Ms. Fugate's argument overlaps with her previous argument that Ms. Scholl and Ms. Kernen were not authorized to sign the Conduct Report and that the Conduct Report was based on hearsay. Again, to the extent Ms. Fugate is arguing that the Conduct Report is based on hearsay because it was not authored by Investigations and Intelligence or Deputy Warden Phelps (who, she argues, had first-hand knowledge of the phone call and communications), Ms. Fugate's argument is unavailing because it is permissible for a Conduct Report to be based on hearsay. *See Crawford*, 963 F.3d at 683.

Ms. Fugate's argument that Ms. Scholl and Ms. Kernen did not have access to the information upon which the Conduct Report was based is not a ground for relief.

**F.    Communications Do Not Fit Within Offense**

Ms. Fugate argues that "[t]he charged offense is Unauthorized [Correspondence] 253. The person in whom I communicated with does not categorize under any of the sections listed in 02-01-103 Restricted Correspondence." [Filing No. 1 at 9.]

Policy 02-01-103, to which Ms. Fugate refers, is not part of the record in this case and the Respondent explains that the online version of the facility's policies is dated September 2023, after

---

[4] Ms. Fugate set forth the final five grounds in support of her Petition on blank pages attached to her form Petition. [Filing No. 1 at 9-10.] The Respondent does not respond to her final five grounds, perhaps because those arguments did not appear on the form Petition. In any event, the Court addresses the merits of Ms. Fugate's arguments in the interest of justice and because many of the final five grounds overlap with Ms. Fugate's first four grounds. The Respondent's counsel, however, is cautioned to ensure in other cases that it is considering all of the arguments set forth in the Petition.

the events underlying this case transpired. [Filing No. 9 at 12, n.3.] In any event, Policy 02-01-103 is not referenced in the Conduct Report and is not relevant here. Instead, the Conduct Report references Offense 253 and the Televerde Agreement. Offense 253 states:

> An offender who receives a direct written order from an IDOC staff person, volunteer, or contractor to cease mailing, delivering, or otherwise sending correspondence to a specific other person, must comply with the direct written order. Any act or attempt to act contrary to the direct written order, violates this provision.

[Filing No. 9-12 at 10.] The "direct written order" is the Televerde Agreement, which prohibited Ms. Fugate from "accept[ing] connection requests from friends or family members who attempt to engage via Televerde provided social media accounts," and stated "[i]t is the inmate's responsibility to immediately report the receipt of such requests to their supervisor." [Filing No. 9-3 at 1.] As the Conduct Report explains, Ms. Fugate communicated with a customer through Televerde – including having inappropriate conversations, sending messages, and engaging in money transactions – which was unauthorized by virtue of the Televerde Agreement. [Filing No. 9-1.] The Conduct Report adequately set forth actions which fall within Offense 253 and are prohibited by the Televerde Agreement.

This ground does not provide a basis for habeas relief.

### G. Failure to Provide Copies of Prohibited Correspondence or Tell Ms. Fugate That Her Communications Were Prohibited

Ms. Fugate argues "[t]here was no report of action taken on [correspondence], Policy 02-01-103. I never [received] any forms or copies of confiscation of [correspondence] telling me that I'm restricted or not allowed to correspond with this person." [Filing No. 1 at 9.]

It is difficult to discern what Ms. Fugate's argument is, but to the extent she is arguing that she was entitled to a reprimand before being charged with Offense 253, her argument is without

14

merit. As discussed above, Offense 253 refers to a "direct written order" from a contractor not to engage in certain correspondence. The Televerde Agreement was that order, in which Ms. Fugate agreed not to "accept connection requests from friends or family members who attempt to engage via Televerde provided social media accounts." [Filing No. 9-3 at 1.] Also as discussed above, the hearing officer considered the transcript of the phone call in which Ms. Fugate and Mr. Adams made initial contact and the 33 pages of inappropriate messages between the two. Ms. Fugate did not have a due process right to that evidence before the hearing. *Boyd*, 2022 WL 17404192, at *4. The Court also notes that Ms. Fugate was a party to the phone call and the messages in any event.

Any argument that Ms. Fugate was not provided with an order to cease the inappropriate communications once they started before being charged, or that she did not receive the phone call transcript and messages is not a basis for relief.

### H. Failure to List All Hearing Evidence in the Conduct Report

Ms. Fugate states:

> The only evidence listed on the report of conduct is "ICI/Televerde Inmate Social Selling Agreement." The evidence the Disciplinary Hearing Officer used to reach a guilty verdict at the hearing was a Televerde phone call (which is not listed as evidence), GTL messages (which is not listed as evidence), and an email from Lori Furn[i]ss (which is not listed as evidence), nor is she listed as a witness in [the] conduct report.

[Filing No. 1 at 10.]

The Conduct Report refers only to the Televerde Agreement, [Filing No. 9-1], and the Hearing Report indicates that the hearing officer considered the transcript of the Televerde phone call, the GTL messages, and the email from Lori Furniss, among other things, [Filing No. 9-7]. But there is no due process requirement that the Conduct Report list all of the evidence that will be presented at the hearing – indeed, Ms. Fugate was not entitled to know what evidence would be

15

presented at the hearing in advance of the hearing. *See Wolff*, 418 U.S. at 556; *Boyd*, 2022 WL 17404192, at *4.

Ms. Fugate's argument that the Conduct Report did not list all of the evidence that was ultimately presented and considered at the hearing does not provide a basis for relief.

### I. Failure to List All Hearing Witnesses in the Conduct Report

Finally, Ms. Fugate argues that "[t]here is no witnesses listed on the conduct report. If Deputy Warden wrote a witness statement, she should be listed as a witness along with anyone else involved in the report, which is not." [Filing No. 1 at 10 (emphasis omitted).]

As discussed above in connection with Ms. Fugate's argument that the Conduct Report did not list the evidence presented at the hearing, Ms. Fugate did not have a due process right to receive a list of witnesses before the hearing. *See Wolff*, 418 U.S. at 556; *Boyd*, 2022 WL 17404192, at *4.

This argument does not provide a basis for relief.

### IV.
### CONCLUSION

"The touchstone of due process is protection of the individual against arbitrary action of the government." *Wolff*, 418 U.S. at 558. There was no arbitrary action in any aspect of the charge, disciplinary proceedings, or sanctions involved in the events identified in this action, and there was no constitutional infirmity in the proceeding which entitles Ms. Fugate to the relief she seeks. Accordingly, Ms. Fugate's Petition for a Writ of Habeas Corpus, [1], is **DENIED** and the action **DISMISSED**. Judgment consistent with this Order shall now issue.

According to the IDOC website, it appears that Ms. Fugate has been released from IDOC custody on probation with the Gary Parole District.[5] Since her release, Ms. Fugate has not updated her address with the Court. In an attempt to ensure that Ms. Fugate receives the Court's Order, the Court is sending it to Ms. Fugate at both her outdated address on the docket and at the Gary Parole District so that the Gary Parole District may forward the Order to her or otherwise ensure her receipt of it.

Date: 10/11/2024

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**

**Distribution via U.S. Mail to:**

Kaysie Fugate
237240
Madison Correctional Facility
800 Bus Stop Dr.
Madison, IN 47250

Kaysie Fugate
Gary Parole District
569 Tyler St.
Gary, IN 46402

---

[5] https://www.in.gov/apps/indcorrection/ofs/ofs?offnum=237240&search2.x=58&search2.y=18 (last visited October 10, 2024).